IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE BALDWIN, | ) | CASE NO. 5:08CV2750 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE ADAMS |
| v. | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| MAGGIE BEIGHTLER, Warden, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

This matter is before the magistrate judge pursuant to Local Rule 72.2(b)(2).

Before the court is the petition of Lawrence Baldwin ("Baldwin") for a writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254 on November 21, 2008.  Baldwin is in the

custody of the Ohio Department of Rehabilitation and Correction pursuant to journal

entry of sentence in the case of *State of Ohio vs. Baldwin*, Case No. 2006CR0807

(Stark County 2006).  For the reasons set forth below, Baldwin' petition should be

dismissed.

I.

The April 2006 term of the Stark County grand jury indicted Baldwin on one count

of robbery pursuant to Ohio Rev. Code § 2911.02(A)(2) ("§ 2911.02(A)(2)") and one

count of felonious assault pursuant to Ohio Rev. Code § 2903.11(A)(1).  The state

appellate court reviewing Baldwin' conviction found the following facts to be relevant to

his case:

[*P2] On May 15, 2006 Dallas Young was working as the manager of the Save-A-Lot grocery store on West Tuscarawas Street in Canton, Ohio.  That morning, around 8:15, while he was setting up the store and talking to a vendor, a male he vaguely remembered seeing in the store before came in asking for a job.  Mr. Young spoke with the male saying something about having previously given him an application.  Because Mr. Young was checking in a vendor, he asked a cashier, Jeanne Bergen, to go the office and get the male job seeker a "phone in application" telephone number.  The store has a small office that is only for managers and employees who are checking their cash register drawers.  No customers are allowed in the office.

[*P3] Ms. Bergin went to the office to get the telephone number for the male.  The door to the office closed but not all the way because of the dead bolt.  As Ms. Bergin was writing down the telephone number, the male pushed on the door and asked her to give him the money.  The male kept pulling his pants, like he was trying to reach for a weapon. Ms. Bergin, screaming and panicking, told the male that she had no money; the money was out in the cash registers.

[*P4] Ms. Bergin's screaming attracted the attention of another employee who alerted the manager that something doesn't seem right.  The manager started walking to the office and Ms. Bergin told him the male was trying to rob her.  The male responded that he was not and fled the store, running down West Tuscarawas Street.  Mr. Young started to follow the male, but stopped when he saw him reach into the waist of his pants like he was pulling out a gun.  The incident was captured on the store's surveillance tape.  The police were called.

[*P5] Canton police officer, Gregory Bray, was dispatched to the store and talked with the manager, Dallas Young, and the cashier, Jeanne Bergin.  Officer Bray asked for and received a description of the robber.  Both individuals described the suspect as a black male in his 40s, five feet six inches tall, 180 pounds, black short hair, dark complected with no beard or mustache, wearing a gray hooded jacket.  Officer Bray turned his information over to Detective Dan McCartney who was assigned to investigate the robbery.  The next day, Detective McCartney talked to Mr. Young and obtained a copy of the store's digital surveillance tape.  Detective McCartney decided to begin his investigation by viewing the videotape and begin a search of the general area around the store for potential suspects.  While driving around the area,  Detective McCartney spotted appellant talking to a white male at Third and Newton Northwest, no more than 200 to 300 yards from the store.  Detective McCartney obtained appellant's name and Social Security number and went back to the station to research appellant's identity.  Detective McCartney decided to investigate appellant further and located him in the 200 block of Newton Northwest.  A photograph was taken of the appellant.

[*P6] Detective McCartney put together two separate photographic lineups containing appellant's photograph, along with five other black males with similar

characteristics.  On May 16, 2006, he showed the photographic lineup to Ms. Bergin who identified appellant - number 5 - as the robber.  On May 17, 2006, he showed a photographic lineup to Mr. Young who identified appellant - number 6 - as the robber.  At trial, both Mr. Young and Ms. Bergin testified that appellant was the male who robbed the store on May 15, 2006.

*State v. Baldwin*, Case No. 2006-CA-00929 (Ohio App. Oct. 29, 2007), Answer, Exh. 12, pp. 2-4.  Baldwin pleaded not guilty to both counts of the indictment.

Upon Baldwin's motion, the court severed the counts of the indictment for trial. One month later, on August 21, 2006, Baldwin told the court that his state-appointed counsel was not representing him diligently or effectively.  After listening to Baldwin's description of counsel's alleged deficiencies, the court was unconvinced that counsel was not diligent or effective and refused to provide new counsel.  At that point, Baldwin told the court that he wanted to represent himself.  He signed a waiver of counsel on August 28, 2006, in which he exercised his right of self-representation, acknowledged that the court had read to him the ten factors to be considered pursuant to *State of Ohio v. Gibson*, 25 Ohio St. 2d 366, 345 N.E.2d 399 (1976), and acknowledged that his previous attorney would be available in the courtroom for consultation.

Baldwin's trial on the charge of robbery began on August 28, 2006 and lasted four days.  The court instructed the jury as to "threat" and "physical harm," necessary instructions for robbery pursuant to § 2911.02(A)(2).  On August 30, 2006, a jury found Baldwin guilty as charged in the indictment.  On September 5, 2006, the court sentenced Baldwin to seven years' imprisonment for robbery.  However, the entry of judgment, recorded September 7, 2006, states that Baldwin was tried on a charge of robbery pursuant to § 2911.02(A)(2) as charged in the indictment, but it also states that Baldwin was found guilty of robbery pursuant to Ohio Rev. Code § 2911.02(A)(1) ("§

3

2911.02(A)(1)").  The entry of sentence, docketed on October 6, 2006, states that Baldwin was found guilty of robbery and sentenced pursuant to § 2911.02(A)(1) as charged in the indictment.

On October 2, 2006, Baldwin pleaded guilty to aggravated assault.  The court sentenced him to 18 months' imprisonment, the term to be served consecutively to the term for robbery.[1]

Baldwin, represented by counsel, filed a timely notice of appeal.  In his appellate brief, he asserted a single assignment of error:

> Whether the jury verdict finding Appellant guilty of robbery was against the manifest weight of the evidence in violation of the due process clause of the United States Constitution?

On October 29, 2007, the state appellate court overruled Baldwin's assignment of error and affirmed the judgment of the trial court.

Baldwin failed to file a timely appeal of the state appellate court's decision.  On January 10, 2008, Baldwin filed a motion for delayed appeal of that decision in the Ohio Supreme Court.  That court denied this motion and dismissed Baldwin's case on February 20, 2008.

In the interim, Baldwin filed in the state court of appeals a motion for an extension of time to file an application for reconsideration of its opinion on November 15, 2007.  The court found that Baldwin had failed to demonstrate extraordinary circumstances that would justify  an extension of time and denied his motion.

On December 28, 2007, Baldwin filed in the state appellate court a timely

---

[1] The clerk docketed the plea on October 3, 2006.

4

application to reopen his appeal pursuant to Ohio App. R. 26(B) ("R. 26(B)").  Baldwin

asserted that due to the ineffective assistance of appellate counsel, he failed to assert

five meritorious issues on appeal:

    1.    Trial court erred by denying appellant's request for new counsel.

    2.    Ineffective counsel during the trial.

    3.    "Sufficiency" Due Process . . . (jury lost their way).

    4.    Prosecutorial misconduct (false evidence).

    5.    Conviction against manifest weight of the evidence.

(Spelling, punctuation, and capitalization altered from the original.)  On February 7,

2008, the appellate court found that Baldwin had failed to raise any genuine issue

regarding whether counsel had been ineffective on appeal and denied his application.

The court did not explicitly address, however, any of Baldwin's claims other than

ineffective assistance for failure to raise the issue of false evidence in relation to

prosecutorial misconduct and conviction against the manifest weight of the evidence.

Baldwin moved the court to reconsider its decision on February 19, 2008.  The court

overruled his motion on February 26, 2008.

On March 12, 2008, Baldwin filed a timely memorandum in support of jurisdiction

in the Ohio Supreme Court, appealing the state appellate court's denial of his

application to reopen.  Baldwin asserted four "assignments of error" in his memorandum

in support of jurisdiction:

    1.    Appellant's due process rights were violated when he was falsely charged, wrongfully convicted, and imprisoned.

    2.    The Police Department arrested and charged an innocent man (the appellant) and gave the State prosecutor false evidence to use in the

5

place of the true evidence which is exculpatory.

3. The prosecutor for the State presented false evidence during the trial while having full knowledge of the exculpatory evidence that was withheld, violating 16(B)(1)(F).

4. Appellant's right to effective counsel was violated by the trial court further violating appellant's rights to equal protection of the law. Appellant was denied effective counsel.

(Punctuation and capitalization altered from the original.) On June 4, 2008, the Ohio

Supreme Court dismissed Baldwin's appeal as not involving any substantial

constitutional question.

While Baldwin's direct appeal was pending in the state appellate court, Baldwin

filed in the trial court a petition for post-conviction relief pursuant to Ohio Rev. Code §

2953.21 on June 14, 2007. Baldwin asserted four grounds for relief in his petition:

1. The defendant/petiioner['s] . . . rights were violated when exculpatory evidence was withheld by prosecutor Joseph Vance, in violation of Rules [sic] 16(B)(1)(F), "Brady doctrine."

2. Falsified documents presented into evidence during the trial by the State's prosecutor, Joseph Vance.

3. Defendant/petitioner['s] . . . rights to a fair trial was [sic] violated, due to ineffective assistance of counsel, leading up to his jury trial; due to the lack of preparedness by Public Defender Barry Wakser.

4. Defendant/petitioner . . . was denied a fair trial when his public defender investigator prejudiced and made incriminating remarks about him to the key witness for the state during her investigation and also when she only made a weak attempt to secure Mr. Baldwin's witness for trial.

On November 7, 2007, the trial court denied Baldwin's petition with the following

comment only: "On October 29, 2007 the Defendant's conviction was affirmed by the

Fifth District Court of Appeals." Judgment Entry, Answer, Exh. 24.

On November 29, 2007, Baldwin filed in the state appellate court an application

6

for a writ of mandamus, requesting that the appellate court compel the trial court to hold an evidentiary hearing, file findings of fact, and vacate the imposed sentence.  On February 25, 2008, the state appellate court granted Baldwin's application in part and directed the trial court to issue findings of fact and conclusions of law related to its denial of Baldwin's petition for post-conviction relief.  The trial court issued those findings of fact and conclusions of law on March 6, 2008.[2]

On June 23, 2008, Baldwin filed in the state appellate court a motion for leave to file a delayed appeal.  On August 5, 2008, the state appellate court found that Baldwin had failed to establish good cause for his delay in filing a timely appeal and denied leave to appeal.  Baldwin did not appeal this decision to the Ohio Supreme Court.

On August 19, 2008, Baldwin filed in the Ohio Supreme Court a petition for a state writ of habeas corpus.  Baldwin alleged that his indictment had been defective for failing to include a necessary element of the crime and that he was denied due process when he was sentenced for a crime for which he was not indicted.  The Ohio Supreme Court dismissed Baldwin's petition without opinion.

On November 21, 2008, Baldwin filed in this court a petition for a writ of habeas corpus.  Baldwin's petition raises nine grounds for relief:

A.      Ground one:  Conviction against the manifest weight.

B.      Ground two:  Ineffective appellate counsel.

C.      Ground three:  The trial court erred by denying my request for new

---

[2]  Baldwin attempted to appeal the state trial court's denial of his petition on December 4, 2007.  The state appellate court dismissed the appeal because, absent a final appealable order from the trial court that included findings of fact and conclusions of law, it lacked jurisdiction to consider the matter.

7

effective counsel on 8-21-06.

D.      Ground four:  Ineffective Counsel during the trial.

E.      Ground five:  Sufficiency--a violation of due process.

F.      Ground six:  Prosecutorial misconduct; right to a fair trial denied.

G.      Ground seven:  Conviction against manifest weight.

*        *        *        *        *

M.      Ground thirteen:  Illegal, unconstitutional confinement.

N.      Ground fourteen:  I am illegally confined due to my being convicted and sentenced for an offense that I was not charged with and did not receive a grand jury indictment.

(Capitalization and punctuation altered from the original.)[3]  Respondent filed an

Answer/Return of Writ on May 11, 2009.  Doc. No. 8.  Petitioner filed a Traverse on May

21, 2009.  Doc. No. 9.  Thus, the petition is ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Stark County, Ohio sentenced Baldwin.  Baldwin

filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State which contains two or more Federal judicial districts, the application may be filed

---

[3]  Although Baldwin included grounds for relief 8 through 12 in his petition, he also stated that he was not seeking relief pursuant to those grounds.  Petition at 10. Respondent made note of that in her Answer and asserted that Baldwin was not entitled to relief pursuant to those grounds.  Baldwin's Traverse made no objection to this.

8

in the district court for the district wherein such person is in custody or in the district court for the district within which the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Stark County is within this court's geographic jurisdiction. This court has jurisdiction over Baldwin' petition.

B.    *Evidentiary hearing*

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Baldwin's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    *Exhaustion of state remedies*

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castillo v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. Macklin*, 936 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v.*

9

*Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v. Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Baldwin has no state remedies available for his claims.  Because no state remedies remain available to him, Baldwin has exhausted state remedies.

D.    *Procedural default*

Respondent argues that Baldwin has procedurally defaulted all of his grounds for relief.  Reasons of federalism and comity generally bar federal habeas corpus review of "contentions of federal law . . .  not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure."  *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

has defaulted his federal claims in state court pursuant to an independent and

10

adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*, 459 U.S. 4 (1982).  Moreover, a failure to present a claim to the highest court in the state deprives a federal court hearing a habeas petition of jurisdiction on that issue.  *See McKeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).

If the state argues that a petitioner has procedurally defaulted his claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

11

      1.      *Default and Baldwin' first and seventh grounds for relief*

In his first and seventh grounds for relief, Baldwin alleges that he was convicted against the manifest weight of the evidence. Baldwin presented this claim to the state courts during his direct appeal of his conviction. Baldwin timely presented the claim to the state appellate court. He failed, however, to present the claim timely to the Ohio Supreme Court. Instead, he attempted to present this claim to the Ohio Supreme Court by way of a motion for a delayed appeal. The Ohio Supreme Court, however, denied this motion without opinion.

The Sixth Circuit has previously found that denial of review pursuant to a motion for delayed appeal to the Ohio Supreme Court is an adequate and independent ground upon which Ohio may rely to foreclose habeas review. *Smith*, 463 F.3d at 431-32. The Sixth Circuit has also held that a dismissal of a delayed appeal to the Ohio Supreme Court without opinion is a dismissal on procedural grounds, not a dismissal on the merits. *Id.* at 432, 432 n.3. Consequently, Baldwin procedurally defaulted his first ground for relief.[4]

Baldwin attempted to raise this claim again by way of an application to reopen his appeal pursuant to Ohio App. R. 26(B) ("R. 26(B)"). Baldwin asserted that his appellate counsel should have raised this claim, among others, on direct appeal. An application to reopen pursuant to R. 26(B) asserts that the appeal should be reopened because

---

    [4] Baldwin argues that his filing of a motion for a delayed appeal within 30 days of the date for filing a timely appeal was not unreasonable and should be excused. That is not a decision for this court to make. As the Ohio Supreme Court dismissed the appeal under circumstances requiring this court to find that it was a dismissal on procedural grounds, this court must regard this ground for relief as procedurally defaulted.

appellate counsel was ineffective on direct appeal.  Inclusion of claims other than ineffective assistance of appellate counsel in an application pursuant to R. 26(B) does not preserve them from procedural default.  *White v. Mitchell*, 431 F.3d 517, 526 (6th Cir. 2005).  Thus, Baldwin's substantive claim that his conviction was against the manifest weight of the evidence was not properly raised in his application to reopen.  His attempt to raise the claim in his application to reopen did not save it from procedural default.

Baldwin fails to demonstrate cause and prejudice for his procedural default of his first and seventh grounds for relief.[5]  Consequently, Baldwin's first and seventh grounds for relief should be dismissed.

2.    *Default and Baldwin's third through sixth grounds for relief*

Baldwin attempted to raise his third through sixth grounds for relief by way of an application to reopen his appeal pursuant to R. 26(B).  Baldwin asserted that his appellate counsel should have raised these claims on direct appeal.

As noted above, an application to reopen pursuant to R. 26(B) may only assert that the appeal should be reopened due to the ineffective assistance of appellate counsel, and Baldwin's inclusion of other claims in his application does not save those claims from procedural default.   Thus, because claims three through six were not properly raised in the state courts, Baldwin has defaulted those claims.

While claims other than ineffective assistance of appellate counsel may not

_____

[5]  Baldwin attempts to circumvent the procedural default of this claim by asserting ineffective assistance of appellate counsel as cause for his default.  Appellate counsel raised this claim on direct appeal.

properly be raised in an application to reopen pursuant to R. 26(B), constitutionally ineffective assistance of appellate counsel may serve as cause and prejudice for claims defaulted due to that ineffectiveness.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). The burden is on the petitioner, however, to demonstrate that appellate counsel was, indeed, constitutionally ineffective.  As shown below in the examination of the merits of this claim,[6] Baldwin's argument that appellate counsel was ineffective is without merit. Consequently, ineffective assistance of appellate counsel cannot serve as cause to excuse Baldwin's default of his third, fourth, fifth, and sixth claims.

Baldwin also asserts that he is actually innocent of the crimes of which he was convicted.  Innocence is not a ground for habeas relief, although a claim of innocence allows a federal court to review the merits of an otherwise procedurally-defaulted claim. *See Herrera v. Collins*, 506 U.S. 390 (1993) (holding that a claim of actual innocence based on newly discovered evidence is not ground for federal habeas relief); *Murray v. Carrier*, 477 U.S. 478 (1986) (holding that in an extraordinary case, where constitutional violation has probably resulted in conviction of one who is actually innocent, a federal habeas court excuse a procedural default without a showing of cause for the default).  A habeas petition asserting innocence must present new evidence and demonstrate that in light of that evidence "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup v. Delo*, 513 U.S. 298, 327 (1995).

Baldwin fails to present new evidence.  Rather, he presents evidence that was

---

[6] *Infra.*, pp. 19-28.

14

presented to the jury at trial and claims that this evidence was falsified. As is shown below,[7] this claim is without merit. As Baldwin fails to produce new evidence in light of which no reasonable jury would have found him guilty, he has failed to support his claim of innocence.

Baldwin's claims of ineffective assistance of appellate counsel and actual innocence are without merit. Because Baldwin has failed to demonstrate ineffective assistance of appellate counsel or actual innocence, neither can serve as cause to excuse Baldwin's procedural default of his third, fourth, fifth, and sixth claims. Consequently, those claims should be dismissed.

*3.* *Default and Baldwin' thirteenth and fourteenth grounds for relief*

Baldwin argues in ground thirteen that he was convicted upon a faulty indictment that failed to include a necessary *mens rea* as an element of the offense. In ground fourteen, he contends that although he was convicted of robbery pursuant to § 2911.02(A)(1), a crime containing a "deadly weapon" element, his indictment charged him pursuant to § 2911.02(A)(2), a crime not containing a "deadly weapon" element. These alleged errors, he asserts, result in his being held pursuant to crimes with which he was not charged and deprived the trial court of jurisdiction over him.

Baldwin presented these claims to Ohio courts only in his petition to the Ohio Supreme Court for a state writ of habeas corpus. As is shown below, it is black letter law in Ohio that a state action for habeas corpus relief may not be used to assert such claims.

_____

[7] *Infra,* p. 27,

A claim that a criminal complaint or indictment is defective cannot be raised by way of a petition for state habeas corpus relief in Ohio.  "Like other extraordinary-writ actions, habeas corpus is not available when there is an adequate remedy in the ordinary course of law." *McAllister v. Smith*, 119 Ohio St. 3d 163, 164, 892 N.E.2d 914, 915 (2008) (quoting *In re Complaint for Writ of Habeas Corpus for Goeller,* 103 Ohio St. 3d 427, 816 N.E.2d 594 (2004)).  "An extraordinary writ cannot challenge the validity or sufficiency of a charging instrument, and [a defendant] has an adequate remedy in the ordinary course of law by appeal to raise his claim that the criminal complaint was defective." *Monroe v. Jackson*, 119 Ohio St. 3d 344, 344, 894 N.E.2d 43, 44 (2008); *see also* *Orr v. Mack*, 83 Ohio St. 3d 429, 430, 700 N.E.2d 590, 591 (1998) ("[H]abeas corpus is not available to attack the validity or sufficiency of the charging instrument.").  Moreover, if a defendant fails to challenge the sufficiency of an indictment and is convicted under it, the defendant has waived any challenge to that indictment.  "'[T]he manner by which an accused is charged with a crime is procedural rather than jurisdictional, and after a conviction for crimes charged in an indictment, the judgment binds the defendant for the crime for which he was convicted.'" *Id.* (quoting *State ex rel. Nelson v. Griffin,* 103 Ohio St. 3d 167, 814 N.E.2d 866 (2004)).  Baldwin failed to challenge his indictment by the proper means available to him in Ohio, and he did not raise that claim properly in the Ohio Supreme Court.

Similarly, a claim that a defendant was improperly sentenced cannot be raised by way of a petition for state habeas corpus relief in Ohio. *McAllister*, 119 Ohio St. 3d at 164, 892 N.E.2d at 915.  Any error made in the entry of sentence should be corrected by motion in the trial court and, if that is insufficient, by petition to the state appellate

court for a writ of mandamus or a writ of procedendo.  *Id.*, 119 at 165, 892 N.E.2d at 915.

The Ohio Supreme Court dismissed Baldwin's petition for a writ of habeas corpus without opinion.  When a state court is silent, federal courts presume that the state court "would not have ignored its own procedural rules and would have enforced the procedural bar."  *Simpson v. Sparkman*, 94 F.3d 199, 203 (6th Cir. 1996).  This court must assume, therefore, that the Ohio Supreme Court dismissed Baldwin's petition because it raised claims not properly the subject of a petition for state habeas relief.[8]  Consequently, the court should dismiss Baldwin's thirteenth and fourteenth grounds for relief as procedurally defaulted.[9]

### III.  Ineffective Assistance of Appellate Counsel

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a

---

[8] Baldwin provides no support for his contention that the alleged errors deprived the state trial court of jurisdiction over him.  The Supreme Court rulings cited above, describing how each of the alleged errors are properly handled pursuant to Ohio law, implicitly recognize that these errors do not deprive a trial court of jurisdiction over a defendant.

[9] Baldwin would not have been able to obtain federal habeas relief on these claims even if they had not been defaulted.  As respondent points out, the claim that his indictment was faulty is not a claim cognizable in federal habeas proceedings.  *See* Answer at 31 (citing *Burrows v. Engle*, 545 F. 2d 552, 553 (6th Cir. 1976)).  Baldwin's claim that he was sentenced according to the wrong statute is trial error susceptible to harmless error analysis pursuant to *Brecht v. Abrahamson*, 507 U.S. 619 (1993).  The jury was given an instruction consistent with § 2911.02(A)(2), the statute under which he was charged in the indictment.  The court sentenced him on September 5, 2006, two days before the first appearance of the mistaken citation of § 2911.02(A)(1) as the statute charged in the indictment.  Both § 2911.02(A)(1) and § 2911.02(A)(1) were felonies of the second degree.  Thus, each had the same sentencing range.  Under these circumstances, Baldwin does not provide any believable explanation of how he was prejudiced by what was, apparently, a typographical error.

17

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only if the state court's decision is contrary to clearly established federal law or was based on an unreasonable determination of the facts in light of the evidence.  *Carey v. Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006); *Williams v. Taylor*, 529 U.S. 362, 379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not its dicta, and the law must be clearly established at the time of the petitioner's conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and "unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court.  Under the statute, a federal court may grant a writ of habeas corpus if the relevant state-court decision was either (1) "*contrary to* . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "*involved an unreasonable application of* . . . clearly established Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is "contrary to" clearly established federal law if it reaches a conclusion opposite to that reached by Supreme Court holdings on a question of law or if it faces a set of facts materially indistinguishable from relevant Supreme Court precedent and still arrives at

18

an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Baldwin's remaining ground for relief, ground two alleging ineffective assistance of appellate counsel, using the deferential standard applied to state court rulings on the petitioner's claims.

Baldwin asserts that his appellate counsel was ineffective for failing to include in his direct appeal the claims that Baldwin includes in his habeas petition as grounds for relief one and three through seven:  (1) & (7) Baldwin was convicted against the manifest weight of the evidence; (3) the trial court erred by denying Baldwin's request for new counsel; (4) trial counsel was ineffective; (5) Baldwin was convicted upon insufficient evidence; and (6) the prosecutor knowingly used false evidence against him. These assertions are without merit.

Defendants have a right to appointed counsel for the first appeal of right.  *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987).  An appellant has no constitutional right to have every nonfrivolous issue raised on appeal, *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and tactical choices regarding issues on appeal are properly left to the sound judgment of counsel.  *United States v. Perry*, 908 F.2d 56, 59 (6th Cir.), *cert. denied*, 498 U.S. 1002 (1990).  The standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984),  is applicable to claims of ineffective assistance of appellate counsel.  *See Bowen v. Foltz*, 763 F.2d 191, 194 n.4 (6th Cir. 1985).

19

Petitioner's counsel was ineffective if "counsel's conduct so undermined the proper functioning of the adversarial process that the [process] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell, 130 F.3d 1161, 1167 (6th Cir. 1997)*.  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of counsel's performance is highly deferential to avoid second-guessing an adverse decision.  *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The petitioner "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130 F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness

20

of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable . . . ." *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding. Accordingly, any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at 1168.  Further "the burden rests on the accused to demonstrate a constitutional violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional violation requires showing that "counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him."  *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact.

*See Williams*, 529 U.S. 362.  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96. That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  *Id.*  There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.  The court will examine each of Baldwin's claims of ineffective assistance of appellate counsel using the two-pronged approach described in *Strickland* and using the standard of review described in *Williams*.

>         1.      *Ineffective assistance and failure to assign new counsel*

Baldwin contends that his appellate counsel was ineffective because counsel failed to argue that Baldwin was denied his Sixth and Fourteenth Amendment right to counsel when the trial court failed to appoint new, state-appointed counsel at Baldwin's request.  Baldwin asserts that this constitutes "structural error" warranting relief, citing

an Ohio case for support.  The state appellate court issued no findings of fact or conclusions of law regarding this issue.

Baldwin was not denied trial counsel.  Baldwin was denied a change of counsel one week before trial for reasons that the court found to be without merit.[10]  Although the United States Constitution requires that a defendant charged with a felony be represented by counsel, it does not require that a defendant receive counsel of choice:

> The right to counsel of *choice,* unlike the *right* to counsel . . . is not absolute.  An indigent defendant has no right to have a particular attorney represent him and therefore must demonstrate "good cause" to warrant substitution of counsel.[FN8] *See, e.g., United States v. Gallop,* 838 F.2d 105, 108 (4th Cir. 1988); *United States v. Allen,* 789 F.2d 90, 92 (1st Cir.1986); *United States v. Young,* 482 F.2d 993, 995 (5th Cir. 1973); *see also Nerison v. Solem,* 715 F.2d 415, 418 (8th Cir. 1983) (a defendant must show "justifiable dissatisfaction" with his appointed counsel to warrant substitution of counsel).[FN9]
>
> > FN8. In reviewing whether a district court abused its discretion in denying a defendant's motion to substitute counsel, appellate courts generally consider the timeliness of the motion; the adequacy of the court's inquiry into the defendant's complaint; and whether the conflict between the attorney and client was so great that it resulted in a total lack of communication preventing an adequate defense.  *See, e.g., United States v. Gallop,* 838 F.2d 105, 108 (4th Cir. 1988); *United States v. Allen,* 789 F.2d at 92; *United States v. Whaley,* 788 F.2d 581, 583 (9th Cir. 1986); *United States v. Rogers,* 769 F.2d 1418, 1423 (9th Cir. 1985); *cf. Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985).  Further, "[c]onsideration of such motions requires a balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice."  *Wilson v. Mintzes,* 761 F.2d at 280 (footnote and citations omitted). . . .

---

   [10]  Baldwin also fails to demonstrate that habeas relief is warranted on the basis of this claim, ground three in his petition.  Baldwin cites no holding of the United States Supreme Court that a denial of a request to change state-appointed counsel under these circumstances infringes the right to counsel protected by the Sixth and Fourteenth Amendments, nor does he cite any Supreme Court holding that failure to substitute counsel under these conditions constitutes "structural error."  Thus, Baldwin fails to establish that his third ground for relief is meritorious, even if it were not procedurally defaulted.

*United States v. Iles*, 906 F.2d 1122, 1130-31 (6th Cir. 1990).

Baldwin expressed dissatisfaction with appointed counsel one week before trial was scheduled to start.  On August 21, 2006, the trial court held a hearing to investigate Baldwin's dissatisfaction.  Transcript of Proceedings, August 21, 2006 ("Tr."), Answer, Exh. 2.  During the hearing, Baldwin contended that he was not being represented diligently or effectively because counsel had only come to see him twice, was late in receiving information from Baldwin about potentially favorable witnesses, and had hired an investigator who had implied to one of the witnesses that Baldwin was guilty.  Tr. at 3-4.  Baldwin's counsel testified that he had spoken to the persons who were present during the robbery and to Baldwin's supposed alibi witness.[11]  Tr. at 6-7.  He admitted that the investigator had accidentally implied to a potential witness that Baldwin had committed the robbery.  Tr. at 5-6.  After hearing testimony from Baldwin and his counsel, the court declined to appoint new counsel.

Baldwin's motion came one week before trial; the court's inquiry, while not extensive, was adequate to uncover the allegations and essential related facts; and there was no evidence that the conflict between Baldwin and his attorney was so great that a total lack of communication prevented an adequate defense.  Under these circumstances, the trial court did not abuse its discretion under federal law in denying Baldwin a change of counsel.  Moreover, the state appellate court reviewing Baldwin's conviction found that the failure to appoint new counsel under these circumstances did not violate Ohio law:

---

[11] The witness told the investigator that, contrary to Baldwin's assertions, he had not been with her at the time of the robbery.

{¶ 34} The right of an accused to select his or her own counsel is inherent only in cases where the accused employs counsel; an indigent defendant is not entitled to counsel of choice.  *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92; *State v. Gordon* (2002), 149 Ohio App.3d 237. Rather, an indigent defendant is entitled to competent, effective representation from appointed counsel.  *Id.*  "Competent representation does not include the right to develop and share a 'meaningful attorney-client relationship' with one's attorney."  *Id.* at 241, citing *Morris v. Slappy* (1983), 461 U.S. 1.

{¶ 35} When a defendant expresses concerns or complaints regarding appointed counsel, the trial court has a duty to inquire into the nature of the complaint, make such inquiry a part of the record, and make a decision on the record.  *State v. Davis* (May 19, 1998), Franklin App. No. 97APA08-1020; *State v. Deal* (1969), 17 Ohio St.2d 17.  Mere personality conflicts or disputes regarding trial strategy are insufficient to warrant appointment of new counsel where such conflicts do not interfere with preparation or presentation of a competent defense.  *Thurston; Gordon; Davis, supra.*  Generally, to justify the appointment of new counsel, the defendant must show the relationship with appointed counsel jeopardized the defendant's right to effective assistance of counsel.  *State v. Coleman* (1988), 37 Ohio St.3d 286.

State v. Bowman, 2006 WL 3365506, at *8 (Ohio App. Nov. 21, 2006); *see also State v. Blankenship*, 102 Ohio App.3d 534, 657 N.E.2d 559 (1995) ("[A]n indigent defendant is entitled to the appointment of substitute counsel only upon a showing of good cause, such as a conflict of interest, a complete breakdown in communication, or an irreconcilable conflict which leads to an apparently unjust result.").

Baldwin fails to cite caselaw or statutory law that would demonstrate that the court's refusal to appoint new counsel under these circumstances ran counter to any federal or state legal mandate.  Indeed, Baldwin's sole support for his contention that the refusal to change counsel was erroneous is the following:  "'Habeas is warranted when the denial leads to an unjust result.'  *State v. Blankenship* (1955), 102 Ohio App. 3d 534, 558.  My denial caused an unjust result."  Traverse at 26 (typeface and punctuation altered from the original).  Thus, Baldwin fails to show that had appellate

25

counsel raised the claim that Baldwin was denied his right to trial counsel pursuant

either to federal law or Ohio law that this claim might have been successful on appeal.

Baldwin has failed to show, therefore, that appellate counsel's performance fell below

an objective standard of reasonableness.  Having failed to pass the first prong of the

*Strickland* test, there is no need to determine if Baldwin was prejudiced by the alleged

error.  *Willis v. Smith*, 351 F.3d 741, 746 (6th Cir. 2003).

> 2.    *Ineffective assistance and ineffectiveness of trial counsel*

Baldwin also contends that appellate counsel was ineffective for failing to argue

that Baldwin's trial counsel was ineffective.  Baldwin's claim, however, is that he himself

was ineffective for attempting to represent himself:

> Being forced to be my own advocate and with no effective counsel appointed, I
> could not conform to the standards of an attorney, nor foresee the use of false
> evidence by the prosecutor for the State.  I was not given any testing to
> determine my ability to represent myself.  The ineffectiveness undermined the
> proper functioning of the adversarial process.  The trial cannot be relied upon as
> having a just result.

Petition at 6.

An individual who has waived his right to counsel and serves as his own counsel

may not later claim that he had ineffective assistance of counsel.  *Faretta v. California*,

422 U.S. 806, 834 n.46 (1975); *see also State v. Turner*, 2007 WL 3105423, at *5-*6

(Ohio App. Oct. 25, 2007); and *State v. McKinney*, 2004 WL 2334318, at *15 (Ohio App.

Oct. 18, 2004).  As Baldwin's claim of ineffective assistance of counsel due to his own

representation of himself was without merit, it cannot be said that his appellate counsel

was ineffective for failing to raise that claim.  Baldwin's claim that appellate counsel was

ineffective for failing to argue that Baldwin was ineffective in representing himself,

26

therefore, does not pass the first prong of the *Strickland* test.

> 3.      *Ineffective assistance and conviction upon insufficient evidence and against the manifest weight of the evidence*

Baldwin contends that his appellate counsel was ineffective for failing to argue that Baldwin was convicted upon insufficient evidence and was convicted against the manifest weight of the evidence.  The test for sufficiency of evidence is more strict than the test for a conviction against the manifest weight of the evidence.  *Nash v. Eberlin, 258 Fed. Appx. 761, 765, 2007 WL 4438008, at **3 (6th Cir. 2007)*.  For this reason,

> [A] determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence.  The Ohio Court of Appeals, for instance, has explained that "'[b]ecause sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency.'  Thus, a determination that a conviction is supported by the weight evidence will also be dispositive of the issue of sufficiency.

*State v. Lee, 158 Ohio App. 3d 129, 814 N.E.2d 112, 115 (2004)* (citations omitted).

Thus, the state appellate court's finding that Baldwin was not convicted against the manifest weight of the evidence necessarily implies that it found Baldwin's conviction to be supported by sufficient evidence.

Baldwin's appellate counsel argued that Baldwin had been convicted against the manifest weight of the evidence.  Baldwin's assertion that appellate counsel was ineffective for failing to raise this argument, therefore, is without merit because it is factually incorrect.  Moreover, Baldwin's argument that appellate counsel was ineffective for failing to argue that Baldwin's conviction was not supported by sufficient evidence is without merit because when the state appellate court found that Baldwin's conviction was not against the manifest weight of the evidence, it implicitly found that there was

27

sufficient evidence to support his conviction. Appellate counsel's performance cannot be said to have been ineffective for failing to raise a claim of insufficient evidence when that claim would not have prevailed. Consequently, Baldwin's appellate counsel did not fall below an objective standard of professional performance in that regard. As Baldwin's claim that appellate counsel was ineffective for failing to argue sufficiency of the evidence does not pass the first prong of the *Strickland* test, there is no need to determine whether counsel's allegedly ineffective performance prejudiced Baldwin.

> ### 4.    Ineffective assistance and prosecutorial misconduct

Baldwin also contends that his appellate counsel was ineffective for failing to argue that the prosecutor knowingly used false evidence against him. The state appellate court reviewing Baldwin's direct appeal found that Baldwin had failed to raise any genuine issue regarding counsel's allegedly ineffective performance because he had failed to demonstrate that the evidence used against him was false.

"The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982). The aim of due process "is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused." *Id.* (citations omitted). To obtain habeas relief a petitioner must show that prosecutorial misconduct was sufficiently egregious that it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637 (1974)); *see also United States v. Young,* 470 U.S. 1, 11-12 (1985) (holding that habeas relief may by granted only if the prosecutor's conduct was so egregious as to

28

render the petitioner's trial fundamentally unfair).  This determination must be made by considering the totality of the circumstances of each case.  *See Byrd v. Collins,* 209 F.3d 486, 529-30 (6th Cir.2000).  The "touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith,* 455 U.S. at 219.

Prosecutorial misconduct is subject to harmless error analysis.  *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997).  On federal habeas review, a petitioner must show that a trial error "had substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).

According to Baldwin, the evidence at trial was that the man who committed the robbery of which Baldwin was accused wore a gray hooded jacket.  Baldwin argues that the tape introduced as evidence at trial showed a man wearing a black hooded jacket. He submits as proof of this assertion facsimile copies, appended to the Traverse as Exhs. D, E, F, and G, of still frames taken from the videotape of the robbery and used at trial as state's exhibits 2-5.  The quality of the copies, however, makes it impossible to tell whether the apparent robber is wearing a dark gray or a black hooded jacket.

Baldwin also argues that the dates and times captioned below each photograph were falsified.  He provides no evidence to support this assertion.

In sum, Baldwin provides no probative evidence whatsoever to support his claim of prosecutorial misconduct.  In the absence of evidence to support such a charge, it cannot be said that his appellate counsel was ineffective for failing to raise that claim in the state appellate court.  Thus, Baldwin's claim that counsel was ineffective for failing to raise the issue of prosecutorial misconduct does not pass the first prong of the

*Strickland* test.

The performance of Baldwin's counsel did not fall below the standard of "reasonably effective assistance" with respect to any of the shortcomings that Baldwin alleges.  As each of Baldwin's claims of ineffective assistance of appellate counsel fails the first prong of the *Strickland* test, the court need not determine whether counsel's allegedly ineffective assistance prejudiced Baldwin.  *Willis*, 351 F.3d at 746.  The court should dismiss Baldwin's second ground for relief, therefore, as without merit.

IV.

For the reasons given above, the court should dismiss Baldwin's petition with prejudice.

Date:  August 14, 2009                    */s/ Nancy A. Vecchiarelli*
                                          United States Magistrate Judge

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**